*430 OPINION OF THE COURT
Anthony J. Garramone, J.
Petitioner moves this court for an order pursuant to CPLR 404 (b) striking the affirmative defense and counterclaim contained in the answer of the respondent or, in the alternative, an order requiring respondent to serve an amended answer and counterclaim.
The pertinent facts are undisputed. On February 9, 1986, respondent’s infant child was injured at certain premises, owned by the petitioner, and leased by the respondent. Respondent alleges that the ceiling in the kitchen collapsed, striking the said infant. Said collapse, respondent alleges, was due to the negligence of the petitioner. On March 4, 1986, respondent’s attorney sent petitioner a letter advising him that a civil claim for damages was to be initiated because of the infant’s personal injuries. Petitioner was further advised to notify his homeowner’s insurance carrier. Thereafter, petitioner commenced a summary proceeding to recover possession of said leased premises located at 24 Faas Avenue, Utica, New York. In that there was no written lease, respondent rented said premises on a month-to-month tenancy. Therefore, the petition was based upon a valid notice to quit which was personally served on the respondent on March 6, 1986.
There is only one issue to be resolved. Respondent asserts that petitioner’s March 6 notice to quit and the subsequent summary proceeding were initiated solely in response to her March 4 letter advising that a civil action would be forthcoming. Petitioner does not deny that contention and it certainly appears from the circumstances that respondent’s threatened litigation was the sole reason for petitioner’s eviction notice. Respondent asserts, as an affirmative defense in her answer and as a cause of action in her counterclaim, that the petitioner cannot seek her eviction in retaliation for her threatened lawsuit, citing Real Property Law §§ 235-b and 223-b as authority. Petitioner, in opposition, responds that those statutory references, dealing with the "warranty of habitability” and responsive retaliatory evictions, are wholly inapplicable. Petitioner moves to strike that affirmative defense and counterclaim pursuant to CPLR 404 (b).
In 1975, the New York State Legislature sought to codify the contemporary common-law theory of an implied warranty of habitability in regard to residential tenancies. It therefore enacted Real Property Law § 235-b. The statute, as enacted, *431 established a statutory warranty for every residential tenant: "In every written or oral lease * * * for residential premises the landlord shall be deemed to covenant and warrant that the premises * * * are fit for human habitation and for the uses reasonably intended by the parties and that the occupants of such premises shall not be subjected to any conditions which would be dangerous, hazardous or detrimental to life, health or safety.” (Real Property Law § 235-b [1].)
That statutory warranty, hailed as a major advancement in the areas of real property and tenant’s rights, nevertheless, created myriad unresolved issues. Foremost among those was the practical interpretation of the statutory warranty itself and the resulting assessment of damages. This issue, still currently unresolved, has had a sparse and erratic history since the enactment of section 235-b. (See, Roberts, Property, 33 Syracuse L Rev 441, 448 [1982].) Initially, the warranty was deemed by a limited number of trial courts to sound in tort law — a tenant would be entitled to sue for personal injuries or consequential property damages on the theory of "strict liability” for the landlord’s breach of the statutory warranty of habitability. Indeed, the Civil Court of the City of New York went so far as to direct that a tenant, struck by a falling kitchen cabinet, was entitled to sue for personal injuries by means of a cause of action sounding in strict liability for landlord’s breach of the section 235-b warranty. (See, Kaplan v Coulston, 85 Misc 2d 745 [1976].)
In 1979, the Court of Appeals, in Park W. Mgt. Corp. v Mitchell (47 NY2d 316 [1979]), did little to address this pivotal issue. It did, however, opine that a lease is more analogous to the law of sales with its implied warranty of fitness (UCC 2-314) than to the law of contracts. (Park W. Mgt. Corp., supra.) Although that dicta would seem to indicate a willingness to expand the section 235-b warranty to encompass consequential damages (at least in property damage claims), the court was circumspect not to officially address remedies other than the standard rent abatement to aggrieved tenants: "We do not comment upon the availability of other remedies not implicated under the facts presented here”. (Park W. Mgt. Corp., supra, p 329.)
Since Park W. Mgt. Corp., New York courts have begun to narrow their interpretation of the section 235-b warranty. The various trial courts appear to be uniform in their approach to the issue. The warranty of habitability does not give rise to a tort claim against the landlord in strict liability for injuries *432 caused by a defect in the premises since the legislative intent behind Real Property Law § 235-b was to make the warranty a contractual matter, not a tort concept. The Legislature did not intend to create a new cause of action in strict tort liability. (Segal v Justice Ct. Mut. Hous. Coop., 105 Misc 2d 453 [1980], affd 108 Misc 2d 1074 [1981]; Mahlmann v Yelverton, 109 Misc 2d 127 [1980]; Brussel v Ruxton Assoc., 114 Misc 2d 574 [1982]; Hamel v Schmidt, 106 Misc 2d 315; Curry v New York City Hous. Auth., 77 AD2d 534 [1980].)
Along with this narrower approach comes a concomitant reduction in the scope of damages. (Brussel v Ruxton Assoc., supra.) The proper measure of damages for a breach of the section 235-b warranty of habitability is the reduction in the fair market value of the premises due to the alleged defect; said compensatory damages to be awarded by lump sum or percentage rental abatement. (See, 2 Rasch, New York Landlord & Tenant—Summary Proceedings § 561.5 [2d ed, 1986 Cum Supp].)
Although controversial and, as yet, not directly addressed by major appellate scrutiny, it seems manifest that section 235-b should be reviewed in contract theory, not strict tort liability. If respondent can establish that petitioner has indeed breached his statutory warranty of habitability, respondent would be entitled to a rent abatement or compensatory damage award due to the reduced fair market value of the leased premises. However, any personal injury action would be based upon the traditional tort theory of negligence; respondent cannot sue in strict liability using as her cause of action breach of the section 235-b warranty.
In 1979, the New York State Legislature enacted Real Property Law § 223-b in an attempt to protect residential tenants from evictions by landlords in retaliation against those tenants exercising, in good faith, their rights to exercise their section 235-b remedies and various other remedies. (See, 3 Rasch, New York Landlord & Tenant — Summary Proceedings § 1323.5 [2d ed, 1986 Cum Supp].) Section 223-b (1) (b) states that no landlord shall serve a tenant or commence an action in retaliation for actions taken in good faith to secure or enforce rights under section 235-b or any New York State law which has as its objective the regulation of leased premises.
The crux of the issue at bar concerns the type of action which respondent has commenced or has threatened to commence. The section 223-b prohibition against retaliatory evic *433 tions only proscribes certain expressly enumerated actions. Indeed, the petitioner, as landlord, is entitled to evict the respondent from the leased premises for any legal reason except for those reasons expressed in Real Property Law § 223-b.
Respondent alleges an illegal retaliatory eviction in violation of section 223-b in that the instant summary proceeding is in direct response to respondent’s exercise of rights pursuant to Real Property Law § 235-b. Petitioner opposes by arguing that nowhere in the language of section 223-b is it indicated that the defense applies if a landlord serves a notice to quit or commences a summary proceeding following the institution, or threatened institution, of a personal injury action based upon negligence. This court concurs with petitioner.
The section 235-b "warranty of habitability” is intended to offer tenants a remedy which sounds in contract, not tort, law. It provides no new cause of action in negligence or strict liability. Any monetary relief would necessarily take the form of a rent abatement or lump-sum award. Despite her assertions to the contrary, respondent’s notice letter of March 4, 1986 is the standard warning that a personal injury action (or action for consequential damages) will be forthcoming. The letter advises that respondent’s attorney "intends to make appropriate claims for damages and you should notify your homeowners insurance carrier immediately of this occurrence if you have not already done so and advise them to contact our office so that we can discuss the claim”.
Clearly, the civil litigation of which respondent advised in the March 4, 1986 letter was beyond the scope of the Real Property Law § 235-b warranty. This court must be very careful in its interpretation of statutory prohibitions. It must balance the rights of a tenant, whether implied or express, against the practical effect of a month-to-month tenancy. By design, that tenancy has evolved so that a landlord would be absolutely free to terminate the tenancy, for any reason, upon the proper notice. Real Property Law §§ 235-b and 223-b restrict that freedom only in very limited circumstances. The instant case falls outside the scope of those prohibitions. Therefore, the instant summary proceeding is not a retaliatory eviction as it is defined in Real Property Law § 223-b. Petitioner’s motion to strike the affirmative defense and counterclaim contained in respondent’s answer is hereby granted.